LA GRANGE BANK #1713, Plaintiff-Appellant and Cross-Appellee, *v.* DU PAGE COUNTY BOARD OF REVIEW, Defendant-Appellee and Cross-Appellant.— JACK L. URETSKY *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS PROPERTY TAX APPEAL BOARD, Defendant-Appellee.

Second District No. 78-276

Opinion filed December 21, 1979.

Jack L. Uretsky, of Ruff & Grotefeld, of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago, and J. Michael Fitzsimmons, State's Attorney, of Wheaton (Paul J. Bargiel and Edward M. Kay, Assistant Attorneys General, and John T. Elsner, III, Assistant State's Attorney, of counsel), for appellees.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Plaintiffs, real property taxpayers, bring these consolidated appeals from two proceedings in the circuit court of Du Page County, namely, a proceeding for administrative review from a decision of the State Property Tax Appeal Board (hereinafter PTAB), and a review by writ of *certiorari* of a decision of the Du Page County Board of Review (hereinafter Board). The Board also cross-appeals from the trial court's denial of its motion to dismiss the petition for writ of *certiorari*. In the proceeding for administrative review, plaintiffs challenged the affirmance of the 1974 real estate tax assessment by the PTAB. The property which is the subject of both appeals (subject property) is a 1½-story brick house, located at 206 North Grant in Hinsdale, Illinois. Built in 1926, the house is situated on an 84- by 186-foot lot and has an area of 1681 square feet. A 21- by 20-foot stucco garage is also situated on the

property. The house has a full basement, two baths, one of which is located on the second floor together with two bedrooms and an attic.

In 1973, the Downers Grove township assessor's office viewed the subject property for the 1974 assessment year. The assessment placed on the subject property as of January 1974 was as follows: land—$8,510, improvements—$17,950, totaling $26,460. The plaintiffs contested the assessment before the Board, and the property was viewed again. The second viewing of the subject property showed that it suffered from some deterioration due to deferred maintenance. As a result of this finding, the Board reduced the original assessment on the subject property to $24,290 total. Through the use of the Du Page County average sales assessment ratio of .3302, this assessment indicated that the approximate value of the subject property would be $73,600.

Thereupon, plaintiffs appealed the Board's decision to the PTAB. At the *de novo* hearing before the PTAB, plaintiffs' witness, Bert Snyder, an area realtor and appraiser, testified that he originally viewed the subject property in July of 1971, and in his opinion the value of the property at that time was $45,500. He again viewed the property in March of 1975; his opinion of the value of the property at that time was $49,500. In arriving at this valuation, he considered the occupancy of the property as a home and the depreciation in the market value of the property due to a general state of disrepair. However, the witness further testified that he did not view the property as of the assessment date of January 1974 nor did he attempt to determine the physical condition of the property as of January 1974. He further stated that the subject property could be worth approximately $70,000.

In support of the assessment, the Downers Grove township assessor testified concerning three properties, located in close proximity to the subject property and comparable to the subject property. The first comparable was a 1½-story brick house with a full basement located at 138 North Grant in Hinsdale. The house is situated on an 82- by 202-foot lot and has 1871 square feet of space. A 13- by 23-foot brick garage is also situated on the property. The house was completed in 1922. This property was assessed for the 1974 year at $26,580; it sold in August of 1974 for $75,000. The second comparable was a two-story brick house with a basement located at 224 North Grant in Hinsdale. This house is situated on a 67- by 186-foot lot and has 1048 square feet of space. The house was completed in 1939. The 1974 assessment placed on this property was $21,260; the property sold in March of 1974 for $61,000. The third comparable property was a two-story brick house with a basement located at 220 North Grant in Hinsdale. This house is situated on a 57- by 186-foot lot and has 936 square feet of space. A 12- by 20-foot garage is also located on the property. This house was completed in 1926. The 1974

assessment placed on this property was $19,640, and it sold in April of 1974 for $67,500. Based on the above testimony, the PTAB determined that the correct 1974 assessment of the subject property was $24,290.

Thereafter, on March 23, 1976, a complaint for administrative review was filed in Cook County Circuit Court. On April 1, 1976, plaintiffs received a letter from the PTAB requiring payment of $245 for the preparation of the record of the proceedings before the PTAB for the administrative review action. Plaintiffs then filed a motion to compel the preparation of the record without cost. On April 12, at the hearing on this motion, the attorney for the PTAB informed the trial court of a possible defect in venue and suggested that the case be continued for a week or two so that the parties might resolve it; the plaintiffs agreed. On April 19, Judge Healy granted PTAB's motion for a transfer of venue to Du Page County. However, on August 18, 1976, Judge Healy vacated his order and transferred the case to Judge Berg of Cook County Circuit Court. On September 1, 1976, Judge Berg, on the motion of the PTAB, transferred the case to Du Page County where it was assigned to Judge Unverzagt. In an order entered on July 5, 1977, Judge Unverzagt affirmed the decision of the PTAB. In his letter opinion he found that PTAB's determination that $24,290 was the correct assessment to be supported by the evidence and in accordance with law.

During the pendency of the above proceedings, plaintiffs sought review of the Board's decision on the 1976 assessment by writ of *certiorari*. The Board filed a motion to strike and dismiss the petition which was denied by the trial court. After reviewing the transcript of proceedings and having heard the arguments of counsel, the trial court determined that the proceedings conducted by the Board were legal and quashed the writ. On October 25, 1977, upon plaintiff's motion, the trial court consolidated the 1974 assessment action with the 1976 assessment action. Thereafter, plaintiffs applied to the trial court for leave to join additional parties and to file a supplemental complaint, contesting the 1977 assessment. On February 3, 1977, Judge Teschner entered a final order denying that motion. This appeal followed.

■■ The first issue on appeal is whether the trial court erred in granting defendant a change of venue from Cook County to Du Page County. Plaintiffs contend first, that the PTAB has waived any objection to venue when it demanded that plaintiffs pay $245 for the preparation of the record and made no objection to venue in Cook County at that time, and further, that the April 12 stipulation to a continuance by the PTAB's counsel amounted to a general appearance, giving the court jurisdiction over the PTAB. (*People v. Estep* (1955), 6 Ill. 2d 127, 126 N.E.2d 637.) However, in *Estep* the defendant contended that a judgment entered against him was void due to improper service of process. During the

pendency of the proceedings, counsel for defendant appeared several times only to move for a continuance of the proceedings. No objection was made on these occasions to the court's jurisdiction over defendant. On appeal, the reviewing court held that any action on the part of the defendant, including a stipulation for a continuance, except to object to the jurisdiction, which recognizes the case in court, will amount to a general appearance. In the case before us, however, at the April 12 hearing, plaintiff's motion to compel preparation of the record was never held and the only discussion centered on the question of venue. While present for the hearing on plaintiffs' motion, counsel for the PTAB informed the trial court at the outset of the hearing that there might be a problem of venue and requested a continuance in order for the parties to work it out, which was agreed to by plaintiffs. Therefore, we cannot conclude on the basis of the PTAB's presence by counsel at the April 12 hearing that the PTAB has waived any objection to venue.

Section 5 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 268) provides that where the particular statute involved does not prescribe venue (which is the case here), the action to review a final administrative decision may be commenced in the Circuit Court of any county in which "(1) any part of the hearing or proceeding culminating in the decision of the administrative agency was held, or (2) any part of the subject matter involved is situated, or (3) any part of the transaction which gave rise to the proceedings before the agency occurred." While plaintiff Uretsky was a resident of Cook County when the action was filed, the subject property was located in Du Page County and all the hearings were held in Du Page County. However, plaintiffs rely on the last sentence of section 5 which provides:

"* * * The court first acquiring jurisdiction of any action to review a final administrative decision shall have and retain jurisdiction of the action until final disposition thereof."

■■ We do not quarrel with plaintiff's assertion that the circuit court of Cook County had the jurisdiction to hear administrative review actions in property tax cases. Jurisdiction of the subject matter does not mean simply jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which the particular case belongs. (Compare *Merit Chevrolet, Inc. v. Department of Revenue* (1965), 33 Ill. 2d 207, 210 N.E.2d 470.) The question here, however, is one of venue, not jurisdiction.

■■ Section 8(2) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 8(2)) provides:

"All objections of improper venue are waived by a defendant unless a motion to transfer to a proper venue is made by him on or before the date upon which he is required to appear or within any

further time that may be granted him to answer or move with respect to the complaint * * *."

Plaintiffs filed their complaint for administrative review on March 23, 1976; a summons was also issued on the same date. Under Supreme Court Rule 291 (Ill. Rev. Stat. 1975, ch. 110A, par. 291), the defendant was required to appear within 35 days after this date. Defendant filed its motion for change of venue on April 15, 1976. Since the motion was filed before the time that defendant was required to appear with respect to the complaint, it satisfies the time requirement of section 8 of the Civil Practice Act.

Plaintiffs also argue that the venue provisions of the Administrative Review Act are to be liberally construed to prevent undue burdens on plaintiffs seeking review from the actions of state agencies. Plaintiff urges that this court should consider the "convenience of the parties" in construing the Act's venue provisions. Further, plaintiff Uretsky points out, first, that he was a Cook County resident at the time he appealed his real property tax assessment to the PTAB although the property assessed was in Du Page County; that the Administrative Review Act in section 5 provides for venue in "any county in which * * * any part of the subject matter involved is situated," and part of the subject matter was plaintiff's 1974 tax liability; and that under the Administrative Review Act, venue exists in "any county in which * * * any part of the transaction which gave rise to the proceedings before the agency occurred," and here the transaction which gave rise to the PTAB hearing on review was plaintiff's appeal to the PTAB, which was filed in Cook County by plaintiff, a Cook County resident.

In their brief, plaintiffs ask this court to assume from the fact that plaintiffs raised the issue that they were substantially inconvenienced by being forced to litigate in Du Page County. However, the only indication in the record was plaintiff Uretsky's statement at the April 19 hearing that he worked in the Civic Center for Cook County and that it would be a terrible burden on him. However, in light of the fact that the subject property is located in Du Page County and the hearings were all held in Du Page County, we cannot say that the change of venue from Cook County to Du Page County unduly burdened plaintiff. Further, we would note that as the Attorney General's office is in Chicago, the State would share the same inconvenience, if any, as plaintiffs'.

■ On the basis of the foregoing discussion, we hold that the trial court did not err in granting a change of venue from Cook County to Du Page County.

Next, plaintiffs contend that the decision of the PTAB was contrary to the manifest weight of the evidence and that the trial court applied an erroneous standard in reviewing that decision.

By statute, the PTAB has the authority to receive appeals from the decisions of boards of review, to make rules of procedure, conduct hearings and make a decision on the appeal. (*People ex rel. Thompson v. Property Tax Appeal Board* (1974), 22 Ill. App. 3d 316, 317 N.E.2d 121.) The nature of its inquiry is limited to the question of the correct assessment of the property subject to the appeal. (*People ex rel. Thompson*.) Further, the findings of an administrative agency such as the PTAB on questions of fact are held to be prima facie true and correct. (Ill. Rev. Stat. 1975, ch. 110, par. 274.) In order to reverse the administrative order, it is required that an opposite conclusion be clearly evident. *People ex rel. Thompson.*

The PTAB found that plaintiffs' property had a fair market value of between $45,500 and $70,000 on January 1, 1974, and that the evidence of comparable sales and assessments supported a determination that the subject property was correctly assessed. Plaintiffs argue that the first finding is incorrect; this position is based on the speculative testimony of Bert Snyder, plaintiffs' own appraiser. Snyder testified that if the property were in the same condition in 1974 as in July of 1971, it could have been "worth in the area of $60,000" with an outside limit of $70,000 "in the better months." Further, plaintiffs assert that the PTAB's recitation that the Board of Review's 1974 assessment was supported by "comparable sales" is unsupported by the evidence due to the fact that the assessor had never inspected the interiors of either plaintiffs' property or the comparables. The PTAB is required to make a decision concerning the correct assessment of the subject property based upon the weight of the evidence received by it during the hearing. (See Ill. Rev. Stat. 1975, ch. 120, par. 592.4.) Without reiterating the facts previously set forth in this opinion, the evidence showed that each of the three comparables was similar in location, age, size, character and use to the subject property. Each of these properties had sold for between $56,000 and $70,000 in 1974. Plaintiffs' appraisal witness never viewed the subject property in 1974 and was only able to testify that if the subject property were in the same condition in 1974 as when he viewed it in March of 1975, the fair market value would have been about $49,000.

■■ Plaintiffs also argue that neither the assessor nor the Board of Review ever determined the fair market value of the subject property. While the assessor never testified as to the fair market value of the subject property, his testimony regarding the value of the comparables supported the valuation made by the PTAB. His failure to testify as to the fair market value does not invalidate the assessment of the subject property.

Further, plaintiffs assert that the assessment was in contravention of the equal protection clause of the fourteenth amendment, because the PTAB failed to reduce the assessed value of the subject property to the

same value of other properties within the same taxing district, relying on *Sioux City Bridge Co. v. Dakota County, Nebraska* (1923), 260 U.S. 441, 67 L. Ed. 340, 43 S. Ct. 190. However, in that case, the United States Supreme Court held that the equal protection clause only required that properties in the same taxing district be assessed at a like rate. Where taxpayers are objecting to reassessments on the basis of a lack of uniformity, they bear the burden of proving the disparity of the assessment valuations by clear and convincing evidence. (*People ex rel. Costello v. Lerner* (1977), 53 Ill. App. 3d 245, 368 N.E.2d 976.) We have reviewed the record in this case and we cannot say that plaintiffs have carried this burden. We reject plaintiffs' contention that the trial court used the wrong standard in reviewing the decision of the PTAB. There is no indication that the trial court "searched the record" rather than finding where the manifest weight of the evidence lay.

■■ Based upon the evidence presented in the record before us we conclude that the decision of the PTAB was not against the manifest weight of the evidence.

Next, plaintiffs contend that they were denied due process in the administrative hearings when the administrative officers admitted incompetent hearsay evidence, heard *ex parte* evidence from adverse parties, demanded one-sided discovery from plaintiff, and refused to make reviewable findings of fair market value or the percentage to be applied to the fair market value.

■■ The hearsay evidence complained of was a newspaper article relating to the value of homes in the area of the subject property and the assessor's testimony as to a deputy assessor's inspection of the property. However, where there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony in an administrative proceeding is not prejudicial error. (*Russell v. License Appeal Com.* (1971), 133 Ill. App. 2d 594, 273 N.E.2d 650.) In light of the testimony here regarding the value of comparable properties, we are satisfied that the admission of the hearsay evidence was not prejudicial to plaintiffs.

Plaintiffs allege that various ex parte communications occurred between the Board and the PTAB concerning plaintiff's appeal to the PTAB, without notice to plaintiff. However, the only support for the charge in the record is a letter sent by plaintiff Uretsky to the PTAB in which he states that he understood from an unidentified third person he had spoken with that these communications were occurring. Since neither the identity of the third party, nor what he or she said, nor the nature of the communications complained of, are contained in the record before us, it is impossible for this court to review this allegation of error.

■■ Plaintiffs also assert that while the PTAB required the production of

certain documents by them, the PTAB would not likewise produce documents for plaintiff. By statute, the PTAB is authorized to make rules of procedure concerning appeals brought from the decisions of boards of review. (See Ill. Rev. Stat. 1975, ch. 120, par. 592.2.) Pursuant to this statutory authority the PTAB promulgated a set of revised rules, which govern the instant appeal and under which the PTAB required the production of the documents from plaintiffs. The plaintiffs do not challenge the rules themselves, only that they do not have a corresponding right to require production of the documents they seek. Upon review of these rules, we conclude that they are procedural in nature and aid in the handling of the appeals to the PTAB and that they were clearly promulgated pursuant to the authority granted by statute and thus the documents were properly requested from plaintiff. Since the statute grants no corresponding production rights to plaintiffs, the PTAB was not required to produce those documents requested by plaintiffs.

Finally, plaintiffs assert that both the Board and the PTAB refused to make findings of fair market value or percentage to be applied to the fair market value to obtain the assessed valuation. The inquiry of the PTAB is limited to the correct assessment of the property subject to appeal. (*People ex rel. Thompson v. Property Tax Appeal Board* (1974), 22 Ill. App. 3d 316, 317 N.E.2d 121.) While it is true that there was no finding setting out the exact fair market value or percentage to be applied, there was testimony which indicated a range of value from $49,500 to $70,000. Further, the Board found that the comparable sales supported the assessment. The PTAB urges, and we agree, that in finding that the assessment based upon the comparable sales was correct, the Board in essence found that the fair market value of the subject property was at or very near to $73,600. Thus, based upon this value, the PTAB found that the correct assessment of the subject property was $24,290. No further detailed findings of fact by the PTAB was necessary. (See *People ex rel. Thompson.*) We note that the plaintiffs have cited this court's opinion in *Chrysler Corp. v. Illinois Property Tax Appeal Board* (1979), 69 Ill. App. 3d 207, 387 N.E.2d 351, as authority for their position here. However, both the facts and the issue in that case differ from the case before us; further, we are satisfied that nothing in that opinion is in conflict with the determinations we make in the case before us.

Next, plaintiffs allege that the Board exceeded its jurisdiction by attempting to make an on-site inspection of the property and by "punishing" plaintiffs for "deferred maintenance." During the Board's hearing on the 1976 assessment, the Board requested an on-site inspection of plaintiffs' property. Plaintiff Uretsky objected, but offered to make an appointment for inspection, subject to judicial review. The Board then withdrew its request. Plaintiffs argue that by withdrawing its request, the

Board was attempting "to frustrate judicial review to determine the legality of its proposed action." On the other hand, plaintiffs also argue that there is nothing in the Board rules or the statute that authorizes Board members to inspect personally the properties under review. Since the on-site inspection did not take place, we fail to see how it could be construed that the Board exceeded its authority.

Plaintiffs further urge that they were punished for "deferred maintenance" relying on the following comment by a Board member: "And we should reward property owners for not keeping their property up?" Prior to the comment, plaintiff Uretsky had stated that he did not regard the assessor's "comparables" as comparable to the subject property, as they were frequently sold and maintained in much better condition than the subject property. Another Board member asked if the deferred maintenance on the subject property was to be taken care of, to which plaintiff Uretsky objected as irrelevant and the above-quoted comment was made. We have reviewed the context in which the above exchange occurred, and we cannot conclude that the Board was either rewarding or punishing plaintiffs for the condition of the subject property. Nor can we say that, based upon the record, the Board's decision on the 1976 assessment hearing was influenced by plaintiff Uretsky's refusal to permit, without objections, an on-site inspection and to maintain the subject property to the Board's satisfaction.

We turn now to the cross-appeal filed by the Board. Plaintiffs appeared before the Board to challenge the real property tax assessment for 1976. The Board confirmed the assessor's valuation. Plaintiffs then filed a petition for writ of *certiorari* in circuit court, requesting the circuit court to review the procedures employed by and the evidence submitted to the Board. The trial court denied the Board's motion to dismiss the petition, and from that order the Board cross-appeals. We note that after determining that the proceedings conducted by the Board were legal, the trial court quashed the writ.

■■■ In the field of taxation, the general rule applies that equity will not assume jurisdiction unless special grounds for equitable jurisdiction are established and unless the plaintiffs do not have an adequate remedy at law, subject to two exceptions, namely, where a tax is unauthorized by law or is levied upon exempt property. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 107, 306 N.E.2d 299, 301.) Other than in cases involving the two exceptions, a special ground for equitable jurisdiction, such as a fraudulently excessive assessment, must exist and that an adequate remedy at law must not be available. *Clarendon Associates*, 56 Ill. 2d 101, 107, 306 N.E.2d 299, 302.

The sum of plaintiffs' allegations against the Board was that the Board's confirmation of the assessor's original valuation of the property

was not supported by the evidence and that the Board reached its conclusion by improper and unlawful procedures. There is no allegation here that the subject property falls within the two exceptions to the general rule stated above. Further, assuming arguendo that the assessment here was so excessive as to be constructively fraudulent (see *Clarendon Associates*), it is clear that an adequate remedy at law does exist. In *Uretsky v. Baschen* (1977), 47 Ill. App. 3d 169, 361 N.E.2d 875, this court outlined the procedures available to the taxpayer, stating as follows:

"It is apparent that the taxpayer has an adequate remedy provided in the Revenue Act of 1939. He may file a complaint with the County Board of Review. (Ill. Rev. Stat. 1975, ch. 120, par. 589(4). See generally pars. 588-592.) If he is not satisfied with the disposition of his complaint in the board of review, he may either seek review by filing an appeal to the State Property Tax Appeal Board whose decision in turn is reviewable by the circuit court pursuant to the provisions of the Administrative Review Act (See Ill. Rev. Stat. 1975, ch. 120, par. 592.4; and ch. 110, pars. 264 *et seq.*) or he may pass (sic) the taxes in full under protest and receive an adjudication of his objections in tax objection proceedings before the circuit court. (See Ill. Rev. Stat. 1975, ch. 120, pars. 675, 675(a), 716.) Under the statutory scheme the taxpayer is able to receive an adjudication of the legality of the 1974 reassessment of which he complains without a determination by a court of equity in the first instance." 47 Ill. App. 3d 169, 176, 361 N.E.2d 875, 881.

■■ In denying the motion to dismiss, the trial court relied on *Goodfriend v. Board of Appeals* (1973), 18 Ill. App. 3d 412, 305 N.E.2d 404. In that case, the appellate court held that where Cook County taxpayers alleged that the Cook County Board of Review had either exceeded its jurisdiction or had proceeded illegally and no mode of direct review was available, writs of *certiorari* were the proper proceedings for a review of its decision. (See also *Jarman v. Board of Review of Schuyler County* (1931), 345 Ill. 248, 178 N.E. 91.) However, in *Goodfriend*, the fact that "no mode of direct review was available" was due to the fact that the jurisdiction of the State Property Tax Appeal Board does not extend to Cook County. It extends only to those counties with a million or less in population. (See Ill. Rev. Stat. 1975, ch. 120, par. 592.1.) We are of the opinion therefore that the holding in *Goodfriend* in this regard does not apply to a tax proceeding regarding property in Du Page County. Therefore, we conclude that the trial court erred in denying the motion of the Board to dismiss the petition for writ of *certiorari* filed by plaintiffs. Deciding as we do, we need not consider the other contention raised by the Board.

For all the foregoing reasons we affirm the decision of the circuit court of Du Page County affirming the decision of the PTAB, and we reverse the decision of that court denying the motion to dismiss the petition for the writ of *certiorari*.

Affirmed in part, and reversed in part.

GUILD, P. J., and NASH, J., concur.