LAKE COUNTY BOARD OF REVIEW, Plaintiff-Appellee, v. PROPERTY TAX APPEAL BOARD, Defendant-Appellant (Brookhaven Partnership, Defendant-Taxpayer; Warren Township *et al.*, Intervenors).

Second District   No. 2—87—0973

Opinion filed July 27, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellant.

Fred L. Foreman, State's Attorney, and James C. Bakk, of Lonchar & Nordigian, both of Waukegan (Joseph E. Kolar and Ernest Y. Ling, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The Lake County Board of Review sought judicial review of an Illinois Property Tax Appeal Board (PTAB) decision which concluded that the method for computing the fair market value of government-subsidized rental property should use the market rent of the property. The trial court reversed the PTAB's decision, finding that actual or contract rent should be used in computing the fair market value of government-subsidized rental property. On appeal, the PTAB contends that the trial court misapplied the guidelines set forth in *Springfield Marine Bank v. Property Tax Appeal Board* (1970), 44 Ill. 2d 428, for ascertaining the fair market value of rental property for taxation purposes.

The Brookhaven Partnership owns and operates a government-subsidized apartment complex located in Gurnee, Illinois. The complex consists of a 15.8-acre parcel of land upon which seven cluster-building groups have been erected. Each group contains one-, two-, and three-bedroom apartments. The complex also has tennis courts, a swimming pool, wheelchair ramps and specially equipped units for the handicapped.

The complex was built in conjunction with the Illinois Housing Development Authority (IHDA) and the United States Department of Housing and Urban Development (HUD). Pursuant to section 7.2 of the Illinois Housing Development Act (Ill. Rev. Stat. 1987, ch. 67½, par. 307.2), Brookhaven obtained a 90% federally insured IHDA loan. Pursuant to section 8 of the United States Housing Act of 1937 as amended (see 42 U.S.C.A. §1437f (West Supp. 1988)), Brookhaven and

HUD executed a contract whereby HUD agreed to subsidize 100% of the complex's units for 20 years. The rent-subsidy contract permitted Brookhaven to charge rent at a rate 38% above projected market rates. Tenants paid 25% of their annual incomes as rent, and HUD paid the difference between the contract rent and the amount received from tenants. The rent-subsidy contract was freely transferable if the complex were to be sold to a prospective purchaser. In 1982, Brookhaven collected $1,312,650 in rent, $393,934 from its tenants and $919,716 from HUD.

■ On February 23, 1983, Brookhaven filed an appeal with the PTAB alleging that the Lake County Board of Review (county board) improperly assessed the value of its complex for 1982. Each party submitted a written appraisal and testimony from its respective appraiser. Both appraisers used the three accepted methods of valuation in determining the fair market value of the complex: (1) the cost approach, which considers the value of the land plus the depreciated reproduction cost of any improvements; (2) the income approach, which considers the capitalization of net operating income; and (3) the market approach, which compares the prices actually paid, asked, or offered for similar properties.

James Curtis, Brookhaven's appraiser, stated that the cost approach provided limited reliability in determining the complex's value because of the complex's inherent functional and economic obsolescence, along with other factors. Under the cost approach, Curtis ascertained that the complex's value was $5,645,000. Curtis further stated that, although the income method was most applicable in determining the value of investment-oriented real estate, it was not reliable in the valuation of the complex due to the complex's inability to generate market rentals high enough to justify the complex's quality, size, and layout. In determining the complex's value under the income approach, Curtis used the market rental value of each unit as opposed to the contract rent actually received for each unit. Curtis determined that the market rent for 1982 was $838,380 and that the complex's value was $5,065,000. In Curtis' opinion, the best method of valuation for the complex was the market approach. Under the market approach, the complex's value was $5,625,000.

William McCann, the county board's appraiser, arrived at a different assessed value for the complex. McCann stated that because the complex was new, the cost approach was a good indicator of its value. Under the cost approach, the complex's value was $6,950,000. McCann did not believe the income approach was accurate in determining the complex's value because that approach was subject to rapid fluctua-

tions in net income caused by vacancies, collection losses, repairs and varying interest rates. In determining the complex's value under the income approach, McCann used the contract rent received from each unit in 1982, which totalled $1,312,650. Under the income approach, McCann determined that the complex's value was $7,150,000. McCann further stated that the market approach was a good indicator of the complex's value and, under that approach, its value was $6,900,000. McCann concluded that the complex's value was $7 million, yet failed to specify which approach he adopted.

On October 29, 1984, the PTAB conducted a hearing on Brookhaven's appeal. At the hearing, Martin Dempski, one of the developers of the complex, testified that the complex's occupancy rate was between 98% and 100%. Dempski indicated that his company would not have built the complex had it not received an IHDA loan and a HUD rent subsidy. Curtis testified that he was required by law to use market rent in determining the value of rental property where the actual rent charged was higher than the market rent. Although he appraised the complex as if it were not government-subsidized, Curtis admitted that the complex would not have been economical to develop without an IHDA loan and a HUD rent subsidy. McCann testified that he considered the HUD rent subsidy in determining the complex's fair market value because the income derived from the subsidy was an integral part of the complex.

On May 22, 1985, the PTAB issued a ruling which found that all encumbrances, including the HUD rent subsidy, must be excluded from the assessment valuation process. The PTAB concluded that the county board's appraisal was seriously compromised because it relied on contract rent rather than market rent in ascertaining the complex's value. The PTAB considered Curtis' appraisal, which disregarded the HUD rent subsidy, the best evidence of the complex's value and fixed its value at $5,625,000.

On June 13, 1985, the review board appealed the PTAB's decision to the circuit court of Lake County. On January 31, 1986, the trial court reversed the PTAB's decision stating, *inter alia*:

> "2. The explanation of the holding of *Springfield Marine Bank* offered by the PROPERTY TAX APPEAL BOARD is too broad. The PROPERTY TAX APPEAL BOARD viewed *Springfield* as holding that all property affected by long term encumbrances must be assessed as if unencumbered. This Court believes that the holding of *Springfield* should be limited to the following: Where property is subject to a disadvantageous long term lease, which results in actual rental income which does not

accurately reflect the property's true earning capacity, the actual rental income may properly be disregarded in arriving at 'fair market value' for taxation purposes.

3. The Revenue Act provides that real property should be valued at one-third of its 'Fair cash value.' (*Ill. Rev. Stats.*, Ch. 120, Sec. 501.) 'Fair cash value' was defined by the Illinois Supreme Court in *Springfield Marine Bank*, 44 Ill. 2d 428 at 430, as '[*sic*] "what the property would bring at a voluntary sale where the owner is ready, willing and able to buy but not forced so to do ***" (*People ex rel. McGaughey vs. Wilson*, 367 Ill. 494, 496, 12 N.E.2d 5, 6; *People ex rel. Wagelin vs. Gillespie*, 358 Ill. 40, 46, 182 N.E. 664.).' A willing buyer would most certainly consider the guaranteed income rate set by the federal government as part of the subsidy program when determining what price he would pay for this property.

     ***

5. While this Court believes that actual rental income is a proper consideration in assessing the value of the property in question, the Court would emphasize that when actual rental income is found to be so misleading as to the value of the property as to properly be disregarded, the 'earning capacity' of the property will then be held to reflect the 'fair cash value' for taxation purposes. (*Springfield Marine Bank*, 44 Ill. 2d at 431; citing *People ex rel. McDonough vs. Chicago Union Lime Works Co.*, 361 Ill. 304 (1935). Because the federal government controls the income which can be earned by establishing both the amount of rent which can be charged and the amount of the subsidy, for federally subsidized housing the 'capacity for earning income' and the 'income actually derived' are one and the same."

The trial court found that PTAB's decision was erroneous as a matter of law and retained jurisdiction over the case. On October 31, 1986, the PTAB determined that the complex's value was $5,769,400. On September 17, 1987, pursuant to Brookhaven's motion, the trial court approved the PTAB's determination of the complex's value. On October 13, 1987, the PTAB appealed the October 31, 1986, and September 17, 1987, orders of the trial court.

This appeal raises the issue whether the contract rent or market rent should be considered in determining the fair market value of government-subsidized rental property for taxation purposes. Based upon the applicable law in conjunction with the particular facts of this case, we conclude that the contract rent should be used in determining the fair market value of government-subsidized rental property.

■ Section 20 of the Revenue Act of 1939 provides that real property shall be valued at 33⅓% of its fair cash value. (Ill. Rev. Stat. 1987, ch. 120, par. 501.) In *Springfield Marine Bank v. Property Tax Appeal Board* (1970), 44 Ill. 2d 428, 430, our supreme court defined "fair cash value" as what the property would bring at a voluntary sale where the owner is ready, willing, and able to sell but not compelled to do so, and the buyer is ready, willing, and able to buy but not forced to do so. The PTAB contends that *Springfield Marine* stands for the proposition that contract rent is irrelevant in determining the fair cash value of property where the contract rent is not reflective of market rent. We disagree.

In *Springfield Marine*, the taxpayer's predecessor in title subjected the property to long-term leases which had approximately 10 years yet to run at the time the court rendered its decision. The value of the property had increased significantly since the leases were negotiated, and the contract rent was substantially below that which could have been obtained under new leases. The county board refused to reduce the assessed value of the taxpayer's property to reflect the effect of the unfavorable leases. The taxpayer appealed the county board's assessment to the PTAB, which reduced the assessed value of the property to reflect the unfavorable leases, and the circuit court affirmed the PTAB's decision. *Springfield Marine*, 44 Ill. 2d at 429.

■ In reversing the circuit court's decision, the supreme court stated:

> "In determining the value of the property, rental income may of course be a relevant factor. [Citation.] However, it cannot be the controlling factor, particularly where it is admittedly misleading as to the fair cash value of the property involved. The relevance of rental income in this instance has been so diminished by the change in the property's value since the rents were established that it was properly disregarded. In such a situation, earning capacity is properly regarded as the most significant element in arriving at 'fair cash value.' As we have recognized in the past, many factors may prevent a property owner from realizing an income from property which accurately reflects its true earning capacity; *but it is the capacity for earning income, rather than the income actually derived, which reflects 'fair cash value' for taxation purposes.* [Citation.]" (Emphasis added.) *Springfield Marine*, 44 Ill. 2d at 430-31.

■ We believe that *Springfield Marine* does not require the use of the valuation approach which the PTAB has suggested. Unlike *Springfield Marine*, the property at issue in this case was burdened with a

government-induced rent subsidy and not an unfavorable lease. In *Springfield Marine*, the unfavorable leases were disregarded in assessing the property's value because they were not reflective of the property's capacity to earn income. The record reflects that the HUD rent subsidy was for a 20-year term and was freely transferable should the property be sold. To disregard the contract rent, which HUD virtually guaranteed in its contract with Brookhaven, in assessing the complex's value would be improper because the contract rent was reflective of the complex's capacity to earn income. Therefore, in our view, the guidelines set forth in *Springfield Marine* do not require that contract rent be disregarded in assessing the value of government-subsidized rental property.

Furthermore, we believe that *Kankakee County Board of Review v. Property Tax Appeal Board* (1987), 163 Ill. App. 3d 811, supports our conclusion. In *Kankakee County*, the taxpayer owned a 125-unit apartment building. The building's rent was subsidized pursuant to an agreement with the IHDA. In determining the assessed value of the building, the taxpayer's appraiser used the market rent as opposed to the contract rent while the county board's appraiser used the contract rent. The trial court approved the PTAB's decision to utilize market rent in ascertaining the building's assessed value based on its analysis of *Springfield Marine*. *Kankakee County*, 163 Ill. App. 3d at 813-15.

In reversing the trial court's findings, the court stated that the valuation approach which the PTAB utilized totally disregarded the subsidy aspects of the property. (*Kankakee County*, 163 Ill. App. 3d at 818.) The court then stated:

"[A]doption of a method of appraisal that ignores the subsidized nature of a project such as Riverwoods Apartments and considers only nonsubsidized apartment buildings in assessing the project's value 'would amount to a judicially-mandated project subsidy by local government, beyond that which legislative policy has established.' [Citation.] In Illinois, as well, we find no specific legislative intent to further subsidize low-rent, State and/or federally subsidized housing projects. In our opinion, the fair market value of Riverwoods Apartments cannot be fairly ascertained without some consideration of its subsidy aspects, since such real aspects of the property would unquestionably be given consideration by the hypothetical willing and able seller and buyer. To the extent that the subsidy agreement(s) affects the property's true capacity for earning income, it (they) cannot be ignored in the assessment of value." *Kankakee County*, 163 Ill. App. 3d at 818.

In his testimony at the PTAB hearing, Curtis stated that he appraised the complex as if it were not government subsidized. Curtis further acknowledged that the complex would have been uneconomical to develop without a HUD rent subsidy. Dempski stated that his company would not have built the complex had it not received an IHDA loan and a HUD rent subsidy. We conclude that the PTAB's failure to consider the contract rent in determining the complex's value was error.

In its brief, the PTAB cites a multitude of cases from other jurisdictions which support the conclusion reached in *Springfield Marine*. We do not disagree, however, with the holding of *Springfield Marine* but, instead, determine that the PTAB has misapplied it to the particular facts of this case. Furthermore, cases from other jurisdictions, which have squarely addressed the issue presented here, are supportive of our position. (See *Executive Square Limited Partnership v. Board of Tax Review* (1987), 11 Conn. App. 566, 528 A.2d 409; *Pinelake Housing Cooperative v. City of Ann Arbor* (1987), 159 Mich. App. 208, 406 N.W.2d 832; *Steele v. Town of Allenstown* (1984), 124 N.H. 487, 471 A.2d 1179; *In re Johnstown Associates* (1981), 494 Pa. 443, 431 A.2d 932; *Kargman v. Jacobs* (1980), 122 R.I. 720, 411 A.2d 1326; *Community Development v. Board of Assessors* (1979), 377 Mass. 351, 385 N.E.2d 1376.) All of the aforementioned cases have concluded that a governmental rental subsidy must be considered in ascertaining the valuation of property for taxation purposes. But see *Canton Towers, Ltd. v. Board of Revision* (1983), 3 Ohio St. 3d 4, 444 N.E.2d 1027 (where use of market rent was permitted under Ohio statute).

■ Our function on review is to determine whether the PTAB acted in accordance with the statutory powers and whether the evidence supports its decision. (*Hall v. Property Tax Appeal Board* (1981), 98 Ill. App. 3d 824, 827.) An assessment based on an improper method is subject to reversal on appeal. (*Board of Review v. Illinois Property Tax Appeal Board* (1982), 104 Ill. App. 3d 859, 862.) Therefore, the trial court was justified in reversing the PTAB's decision because the PTAB used an improper method of valuation in assessing Brookhaven's tax liability.

Accordingly, for the reasons expressed above, the decision of the trial court is affirmed.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.