AMERICAN NATIONAL BANK AND TRUST COMPANY, Trust No. 55055, *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Second District   No. 2—92—0323

Opinion filed March 23, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for appellant.

No brief filed for appellees.

JUSTICE QUETSCH delivered the opinion of the court:
Plaintiff Jack Kristof was the beneficial owner of a one-half interest in plaintiff American National Bank and Trust Company,

trust No. 55055, which owned a parcel of property in McHenry County, Illinois. Plaintiff Zion's Lighthouse, Inc. (Zion), leased this property and used it for religious purposes. Defendant, the Department of Revenue (Department), denied plaintiffs' application for a religious tax exemption for the property under section 19.2 of the Revenue Act of 1939 (Ill. Rev. Stat. 1989, ch. 120, par. 500.2). Plaintiffs then filed a complaint in the trial court for administrative review (Ill. Rev. Stat. 1991, ch. 110, par. 3—103). Without expressly reversing the Department's order, the trial court entered judgment for the plaintiffs and granted the exemption. The Department appeals, claiming that because Kristof leased the property to Zion for a profit, the property is not exempt from taxation.

On June 14, 1989, Kristof and Zion entered into an agreement whereby Kristof leased the property to Zion for $3,200 per month. Zion had an option to buy the property. The agreement provided that if Zion purchased the property prior to July 30, 1990, Kristof would credit Zion $2,000 for every $3,200 rental payment that Zion had made. If Zion made a $100,000 down payment prior to the July 30, 1990, closing, Kristof would refund all of the rental payments that Zion had made. Under the agreement, Zion was responsible for paying any property taxes. As of the March 12, 1991, administrative hearing, Zion had not purchased the property but continued to lease the property from Kristof. The property was up for sale on the open market, although Zion had the right to meet any offer and still intended to purchase the property.

The property contained a large building, a smaller building, a parking lot, and open space. During the relevant time period, Zion was a church with a 50-member congregation. Zion used the large building for religious activities, including church services, Sunday school, and religious counseling. Dan Blankenship, Zion's head pastor, used a portion of the large building as a residence, although Zion did not require that he live there. He used part of the residence as an office where he prepared sermons. He also counseled members of the congregation in the residence. The smaller building was used as a storage shed by both Zion and Kristof. Congregation members parked in the parking lot while they were attending religious activities on the property.

On February 14, 1990, the McHenry County Board of Review recommended denying plaintiffs' application for a property tax exemption for the period of July 1, 1989, to December 31, 1989. On April 6, 1990, the Department denied the plaintiffs' application for the exemption. Plaintiffs then requested a formal hearing before an

administrative law judge. The hearing was held on March 12, 1990. On April 16, 1990, the Department issued a hearing disposition denying the exemption. The Department based its decision on its finding that Kristof, as an owner of the property, leased the property for a profit.

On May 17, 1991, plaintiffs filed a complaint for administrative review in the trial court. Plaintiffs did not materially disagree with the Department's findings of fact. Rather, at the core of plaintiffs' complaint was their argument that Zion's use of the property for religious purposes entitled them to the exemption under section 19.2 even though Zion did not own the property. The trial court entered its order on February 20, 1992, granting judgment for the plaintiffs and granting plaintiffs a property tax exemption for July 1, 1989, through December 31, 1989. The Department appeals from that order.

Plaintiffs filed no brief in this appeal. Therefore, we will review this appeal under the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133.

■ As a preliminary matter, the trial court had no authority to enter a judgment granting an exemption. The trial court's authority in reviewing administrative decisions is limited to the powers expressed in the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 *et seq.*). (*Momney v. Edgar* (1990), 207 Ill. App. 3d 26, 29.) The trial court's powers, which are enumerated in section 3—111 of the Administrative Review Law, do not extend to granting or denying relief but are essentially limited to reviewing the decision of the administrative agency. (Ill. Rev. Stat. 1991, ch. 110, par. 3—111.) Therefore, if the judgment of the trial court is interpreted literally, it is void because the trial court lacked the inherent authority to grant the relief therein. *People v. Sales* (1990), 195 Ill. App. 3d 160, 162-63.

In *Sales*, we held that the trial court's order directing the Secretary of the State to issue a restricted driving permit (RDP) to defendant was void because it exceeded the trial court's authority and violated the separation of powers. Defendant in *Sales* pleaded guilty to aggravated criminal sexual abuse. Such a conviction required the Secretary to revoke defendant's driver's license. (*Sales*, 195 Ill. App. 3d at 161; Ill. Rev. Stat. 1987, ch. 95½, par. 6—205(b)(2).) On defendant's motion, however, the trial court ordered the Secretary to issue defendant an RDP so that the defendant could attend counselling and work. We determined that the trial court lacked jurisdiction to enter such an order because the issu-

ance of an RDP was within the Secretary's discretion. Because its authority to issue an RDP was limited by statute, the trial court lacked the inherent power to direct the Secretary to issue an RDP. *Sales*, 195 Ill. App. 3d at 162-63.

A court's order must be construed in a reasonable manner, however, with reference to other parts of the record, including the pleadings, so as to give effect to the apparent intention of the trial court. (*Granville Beach Condominium Association v. Granville Beach Condominiums, Inc.* (1992), 227 Ill. App. 3d 715, 720.) Technical deficiencies in a judgment can be corrected if such correction does not prejudice the parties. (*City of Chicago v. American National Bank & Trust Co.* (1988), 171 Ill. App. 3d 680, 687.) Supreme Court Rule 366(a)(3) empowers the reviewing court to amend the record to correct errors. 134 Ill. 2d R. 366(a)(3).

*People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 523-24, discusses the reviewing court's ability to modify an otherwise void order under Rule 366(a)(3). In *Arlington Park*, the Department of Human Rights petitioned the trial court to enjoin defendant permanently from committing alleged human rights violations during the pendency of the lawsuit. The trial court granted the permanent injunction even though it was only empowered by statute to grant a temporary or preliminary injunction. The reviewing court refused to enter a *nunc pro tunc* order under Rule 366(a)(3) correcting the trial court's order so that it would be within the scope of the trial court's authority. The court determined that the trial court's order was not merely an inaccuracy or omission. (*Arlington Park*, 122 Ill. App. 3d at 524.) According to the court, the trial court's order was "an entirely accurate reflection of what the trial court ordered" and what one of the parties had requested. *Arlington Park*, 122 Ill. App. 3d at 524.

Contrary to *Arlington Park* and *Sales*, the trial court in this case seems to have phrased its order as it did out of inadvertence and not out of a deliberate exercise of power beyond the scope of the Administrative Review Law. Section 3—111(a)(5) of the Administrative Review Law authorizes trial courts to reverse or affirm decisions of administrative agencies. (Ill. Rev. Stat. 1991, ch. 110, par. 3—111(a)(5).) In this case, therefore, regardless of whether reversing the Department's decision would have been error, it would have been within the trial court's jurisdiction. In addition, because the Department denied plaintiffs' application for a property tax exemption, reversing the Department would have had the same

effect as granting the tax exemption. Conversely, the trial court's order granting the exemption, if it had been appropriate, would have had the same effect as reversing the Department's decision. Because none of the relevant facts were disputed, the trial court's determination turned on the resolution of a question of law, not on a review of the agency's factual findings. From the trial court's perspective, therefore, the resolution of the issues in the cause was tantamount to a *de novo* review of the legal issues. (*Lutheran Child & Family Services v. Department of Revenue* (1987), 160 Ill. App. 3d 420, 423; *Benedictine Sisters of the Sacred Heart v. Department of Revenue* (1987), 155 Ill. App. 3d 325, 327.) Although the trial court's phrasing of its order was grossly inaccurate in light of the trial court's limited powers under the Administrative Review Law, the substantive effect of the order was the same as if the trial court had reversed the Department, an action that the Administrative Review Law would have authorized.

Furthermore, the record reflects that the parties requested the appropriate relief. In their complaint for administrative relief, plaintiffs asked the trial court to reverse the Department's decision. In their briefs before the trial court, both parties informed the trial court of the standard for reviewing an administrative agency's determination. The Department argued that the trial court should affirm its decision and plaintiffs argued that the Department's decision should be reversed.

Trial courts' orders are rarely found to be void because the trial court lacked the authority to order a particular type of relief. (*In re Application of Cook County Collector* (1991), 228 Ill. App. 3d 719, 731.) We must presume that the trial court acted within the scope of its jurisdiction. All indications from the record are that the trial court acted within its authority but used the wrong language in its judgment. Therefore, it is appropriate to treat the judgment of the trial court as a reversal of the Department rather than as an outright grant of the tax exemption to plaintiffs.

We now address whether the trial court's order reversing the Department's decision was in error. The scope of review of an administrative agency's factual findings is limited to whether those findings are against the manifest weight of the evidence. (*Resurrection Lutheran Church v. Department of Revenue* (1991), 212 Ill. App. 3d 964, 969; Ill. Rev. Stat. 1991, ch. 110, par. 3—110.) However, where, as here, the facts are not in dispute, the resolution of the issues is a question of law. (*City of Chicago v. Illinois Department of Revenue* (1992), 147 Ill. 2d .484, 491.) The court's role is to

apply the appropriate legal standard to the facts. *Salvation Army v. Department of Revenue* (1988), 170 Ill. App. 3d 336, 342; *Benedictine Sisters of the Sacred Heart v. Department of Revenue* (1987), 155 Ill. App. 3d 325, 327.

■ All property is presumed to be subject to taxation. (*Lutheran Child & Family Services v. Department of Revenue* (1987), 160 Ill. App. 3d 420, 424-25.) Statutes granting exemptions are construed strictly in favor of taxation. (*Faith Christian Fellowship of Chicago, Illinois, Inc. v. Department of Revenue* (1992), 226 Ill. App. 3d 322, 325.) The party claiming the exemption has the burden of proving that the exemption applies. *Girl Scouts of Du Page County Council, Inc. v. Department of Revenue* (1989), 189 Ill. App. 3d 858, 861.

■ Section 19 of the Revenue Act of 1939 (the Act) provides that "[a]ll property described in Sections 19.1 through 19.23—1, to the extent therein limited, is exempt from taxation." (Ill. Rev. Stat. 1989, ch. 120, par. 500.) Section 19.2 provides:

"All property used exclusively for religious purposes, or used exclusively for school and religious purposes, or for orphanages *and not leased or otherwise used with a view to profit,* including all such property owned by churches or religious institutions or denominations and used in conjunction therewith as parsonages or other housing facilities provided for ministers ***, their spouses, children and domestic workers, performing the duties of their vocation as ministers at such churches or religious institutions or for such religious denominations, and including the convents and monasteries where persons engaged in religious activities reside.

A parsonage, convent or monastery shall be considered for purposes of this Section to be exclusively used for religious purposes when the church, religious institution, or denomination requires that the above listed persons who perform religious related activities shall, as a condition of their employment or association, reside in such parsonage, convent or monastery." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 120, par. 500.2.

Section 19.16 of the Act provides:

"Parking areas, not leased or used for profit, when used as a part of a use for which an exemption is provided hereinbefore and owned by any school district, non-profit hospital or school, or religious or charitable institution which meets the

qualifications for exemption." Ill. Rev. Stat. 1989, ch. 120, par. 500.16.

At issue is whether property leased by a religious organization from a private, for-profit party and used for religious purposes is exempt under the Act.

■■ Without a doubt, the portions of plaintiffs' property used as a parking lot are not exempt from taxation. Section 19.16, which provides the exemption for parking lots, contains the explicit requirement that the religious organization actually own the parking lot. (Ill. Rev. Stat. 1989, ch. 120, par. 500.16.) The court recently interpreted section 19.16 to mean that a church which leased its parking lot from a private party could not claim a tax exemption for the parking lot. (*Faith Christian*, 226 Ill. App. 3d at 325.) By the same token, even if the portion of plaintiffs' property which is used as a parsonage were used exclusively for religious purposes, it would not qualify for an exemption because it is not owned by a religious organization. See Ill. Rev. Stat. 1989, ch. 120, par. 500.2 ("including all such property *owned* by churches or religious institutions or denominations and used in conjunction therewith as parsonages or other housing facilities") (emphasis added).

The statutory language is not as clear, however, with regard to the remainder of the property at issue in this case. Certain provisions in the Act, such as section 19.16 relating to parking lots, specify that in order to be exempt, the property must be owned by an exempt organization. (Ill. Rev. Stat. 1989, ch. 120, par. 500.16.) Section 19.7 provides an exemption for "[a]ll property *of* institutions of public charity." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 120, par. 500.7.) To qualify for an exemption under section 19.7, the property must be owned by a charitable organization and used for charitable purposes. (*Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, 61.) Section 19.1 provides an exemption for "all property *of* schools." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 120, par. 500.1.) We have held that property which a for-profit entity leased to a school and which the school used for school purposes did not qualify for an exemption under section 19.1. *Wheaton College v. Department of Revenue* (1987), 155 Ill. App. 3d 945, 948.

Section 19.2, on the other hand, provides an exemption for "[a]ll property used exclusively for religious purposes" and makes no mention of the ownership of the property. (Ill. Rev. Stat. 1989, ch. 120, par. 500.2.) Arguably, therefore, property which is used for religious purposes but which is owned by a for-profit entity could

qualify under this exemption. In 1922, the Illinois Supreme Court held that to qualify for the religious-use tax exemption, a religious institution need not own the property as long as it uses the property for religious purposes. (*People ex rel. Bracher v. Salvation Army* (1922), 305 Ill. 545, 548 (interpreting a statute substantially similar to the statute that applies to this case).) The church in *Salvation Army*, however, did not lease the property but instead held the property in a contract for sale. The church had made a down payment on the property, assumed a mortgage, and was to obtain the title to the property as soon as the mortgage was paid off. Although the church did not have actual title to the property, it had all other indicia of ownership. (*Salvation Army*, 305 Ill. at 546.) The titleholder to the property had, in effect, already sold the property. More recent cases have held that similar finance agreements conferred the equivalent of ownership. See *City of Chicago v. Department of Revenue* (1992), 147 Ill. 2d 484, 504; *Christian Action Ministry*, 74 Ill. 2d at 61.

Even if section 19.2 does not require actual ownership, to qualify under that section, the property must not be "leased or otherwise used with a view to profit." (Ill. Rev. Stat. 1989, ch. 120, par. 500.2.) Whether property is used for profit depends on the intent of the owner in using the property. (*People ex rel. Goodman v. University of Illinois Foundation* (1944), 388 Ill. 363, 371; *Salvation Army*, 170 Ill. App. 3d at 343.) In this case, Kristof leased the property to Zion for a profit. That Zion intended to purchase the property, was liable under its lease to pay owner Kristof a monthly sum for property taxes, and used the property for religious purposes, does not alter the fact that the owner of the property leased the property for a profit. In light of the presumption in favor of taxation, we hold that the Department correctly found that the property owned by Kristof and leased by Zion was not exempt from property tax.

The judgment of the circuit court of McHenry County is reversed.

Reversed.

INGLIS, P.J., and McLAREN, J., concur.