McLEAN COUNTY BOARD OF REVIEW, Plaintiff-Appellant, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.

Fourth District    No. 4—96—0380

Opinion filed March 3, 1997.

Charles G. Reynard, State's Attorney, of Bloomington (R. Brian Hug, Assistant State's Attorney, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Marcia L. McCormick, Assistant Attorney General, for appellee Property Tax Appeal Board.

James D. Elder, of Bloomington, appellee *pro se*.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In 1991, the supervisor of assessments of McLean County (Supervisor) reclassified property owned by defendant James D. Elder from farm to residential based upon its use. The property in question (hereafter referred to as the parcel) is approximately 16 acres in size. In 1992, the McLean County Board of Review (Board) affirmed the change in classification. Elder appealed this decision to the Property

Tax Appeal Board (PTAB), which concluded in July 1993 that the Board's decision was incorrect and that the parcel should be classified farmland for property tax purposes.

The Board sought administrative review of the PTAB's decision, and in January 1996, the circuit court affirmed. The Board appeals, and we affirm in part and reverse in part.

## I. BACKGROUND

When Elder purchased the parcel in May 1986, it was being used as pastureland for cattle. In June 1986, he received occupancy and construction permits changing the parcel's designation from a "vacant" area to a "family recreation" area in order to build a shelter for farm equipment, which also contained toilet and shower facilities. In January 1987, he received another occupancy permit for a building "for the storage of machinery and equipment necessary to maintain a premises, bath and shower." The record is not clear that Elder was in fact required to apply for these permits for the construction on the parcel, which is located in rural McLean County.

Elder built a rustic pavilion-like building containing a picnic table, a charcoal grill, a yard chair, sanitation facilities, and a shower, as well as a small tool storage area. In 1991, the Supervisor changed the parcel's classification from farm to residential "because of use." As a result, the parcel, which previously had a total assessed value of $1,998, now had a total assessed value of $10,088.

Elder appealed the Supervisor's classification to the Board, which agreed with the Supervisor's conclusion that the parcel should be taxed as residential real estate. The Board held that because the parcel was no longer used as pasture, it no longer fell within the definition of "farm," as defined in section 1—60 of the Property Tax Code (Code), which, in pertinent part, reads as follows:

> "Farm. When used in connection with valuing land and buildings for an agricultural use, any property used solely for the growing and harvesting of crops; for the feeding, breeding and management of livestock; for dairying or for any other agricultural or horticultural use or combination thereof; including, but not limited to, hay, grain, fruit, truck or vegetable crops, floriculture, mushroom growing, plant or tree nurseries, orchards, forestry, sod farming and greenhouses; the keeping, raising and feeding of livestock or poultry, including dairying, poultry, swine, sheep, beef cattle, ponies or horses, fur farming, bees, fish and wildlife farming. The dwellings and parcels of property on which farm dwellings are immediately situated shall be assessed as a part of the farm. Improvements, other than farm dwellings, shall be assessed as a part of the farm and in addition to the farm dwellings when

such buildings contribute in whole or in part to the operation of the [farm]. For purposes of this Code, 'farm' does not include property which is primarily used for residential purposes even though some farm products may be grown or farm animals bred or fed on the property incidental to its primary use." 35 ILCS 200/1—60 (West 1994).

After Elder appealed the Board's decision to the PTAB, a hearing officer for the PTAB conducted a hearing in June 1993. Elder testified, as did his brother, Russ Elder, who also owned an interest in the parcel. The Supervisor, three members of the Board, and the Board's attorney appeared at the hearing, and some of them testified. The hearing was lengthy, and some of the pertinent testimony is described below.

The parcel consists primarily of clay and rock, which is not suitable for row crops. When Elder and his brother purchased the property, they were concerned with conservation and the wildlife habitat in McLean County, in part because of woods being cut down. At Elder's request, the Illinois Department of Conservation (IDOC) developed a wildlife habitat development plan, which it then implemented by plowing the ground and planting seed that had been donated by Pheasants Forever. In 1993, the parcel was enrolled in a United States Forestry Department's program which sought to develop a management plan through "forest recreation enhancement" and "forest improvement for aesthetics."

The building erected on the parcel has gravel floors and is open on three sides, with a closed storage area in the back, which contain a John Deere 400 tractor with a belly mower, a welder, axes, shovels, rakes, and similar items. The building has gravel floors. When Elder and his brother go to the parcel to work, they camp there. However, they only camp there when they are working. Both Elders· testified that the building's function is completely incidental to working the land. The Elders go out to the parcel a total of 12 to 15 days a year and have spent eight days camping on it.

The "farm land habitat project" the IDOC developed for the parcel included plans telling what crops should be grown in what location in order to maximize conservation of the soil and create a hospitable environment for wildlife. Because of soil quality, IDOC recommended that the bottom third of the pasture-land and an existing walnut grove remain intact and that the upper portion be planted in prairie grass. Approximately seven acres of the parcel now consist of prairie grass, three more acres are pastureland, and five are wooded.

The Elders maintain the parcel by mowing the paths surround-

ing the grasses and the perimeter of the property, as well as periodically burning the grasses. They also created a cistern to provide water for wildlife. The Elders removed about 150 honey locust and black locust trees from the parcel, but those trees were not marketable for any use.

Although Elder planted oak and pruned walnut trees on the property, he had no current plans to harvest the timber. Elder tries to keep the parcel as natural as possible. Because no livestock grazes on it, he must periodically burn the thatch. Elder has seen numerous species of birds on the property, but he has made no effort to feed them. He and his brother have hunted pheasant only twice. They are trying to develop an area where the birds can live on their own without depending on people.

Elder testified that he did grow crops on the land and that he and others have harvested wildlife that live on this property by hunting them. He testified that before wildlife can be harvested, they must be grown in numbers, and he maintained the parcel in order to do that. Although he does not actively feed the animals, he maintains an environment in which wildlife can find adequate food.

Elder testified that he was trying to grow and manage wildlife in the area, as well as grow trees for eventual harvest. He said that prairie grass is a cash crop, with the seeds selling for about $60 per pound. However, it takes about 10 years to establish that crop. He intends to harvest the prairie grass and the trees when they are mature.

In its July 1993 written order, the PTAB referred to the testimony and exhibits presented at the hearing and concluded that the parcel was entitled to the farmland classification and assessment. In so concluding, the PTAB specifically referred to the statutory definition of "farm" (35 ILCS 200/1—60 (West 1994) (formerly section 1(21) of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 482(21)))), quoted earlier. In support of its conclusion, the PTAB wrote, in part, the following:

> "[Elder] testified that the land has been managed as a wildlife habitat since 1987 and that the land has continued in this use to the present. [The] [t]estimony revealed that native prairie grasses and timber had been planted to improve the property for wildlife habitat and management."

The PTAB held that Elder's use of the parcel brought it within the definition of "farm" for property tax purposes. The PTAB also included the following in its decision:

> "[The PTAB] hereby orders the [Board] to compute a farmland assessment for the subject parcel. The agricultural assessment is to

be certified to the [PTAB] within 15 days of the date of this decision."

On administrative review, the circuit court affirmed the decision of the PTAB regarding the classification of the parcel, although it did so for reasons other than those specified by the PTAB. The circuit court concluded that Elder

"is managing the subject property as a wildlife and land conservation area, he is in fact farming said area by the planting, cultivation and growth of hardwood trees and native prairie grasses, either of which can be harvested at an appropriate time in the future, that any recreational use of the property is incidental and insignificant, and that a property can be farmed and managed simultaneously as a conservation area, without losing its [farmland] assessment."

The circuit court concluded that the PTAB decision was not against the manifest weight of the evidence presented.

The circuit court further noted that because the Board had refused to accept the case for remand with regard to the proper assessment of the parcel,

"and no specific authority exists for the matter to be remanded to the [Board], the Court finds there is evidence in the record to support a valuation of the property on the basis by which it was evaluated in years prior to 1991, in the amount of $1,988, and the Court so orders."

## II. ANALYSIS

In arguing that this court should reverse the PTAB's determination that the parcel should be classified for tax purposes as farmland and not as residential property, the Board contends that this court can decide the issue of classification *de novo* because "the proper classification of property as a farm is a question of law." The Board further asserts that "[f]ew[,] if any, of the facts in this case are in dispute. It is the legal effect of these facts which has created the controversy." We disagree.

■ In *Illini Country Club v. Property Tax Appeal Board*, 263 Ill. App. 3d 410, 416-17, 635 N.E.2d 1347, 1353 (1994), this court wrote the following:

"Under the Administrative Review Law, judicial review extends to all questions of law and fact presented by the record. [Citation.] An agency's findings on questions of law, such as the interpretation of a statute, are not binding on the courts. When a question of law is presented below, the reviewing court considers the question *de novo*. [Citation.] However, the agency's findings of fact will not be disturbed on review unless they are against the manifest weight of the evidence."

■ In the present case, no one disputes that the definition of "farm" contained in section 1—60 of the Code governs the classification of the parcel at issue. However, how Elder *uses* that parcel does constitute a question of fact, and the PTAB's findings of fact regarding that use will not be disturbed on review by this court unless we conclude those findings are against the manifest weight of the evidence.

When judged in accordance with the proper standard of review, we have no difficulty in concluding that the PTAB's decision was not against the manifest weight of the evidence. We agree with the PTAB that the definition of "farm" in section 1—60 of the Code is very broad and easily fits the facts in this case, as the PTAB found.

The parties are familiar with the record, and we see no need to belabor further the evidence presented at the hearing conducted by the PTAB hearing officer. We note in particular—in support of the PTAB's decision—the summary of the evidence supporting that decision which is set forth in 23 separate points in Elder's brief and argument submitted to the circuit court on administrative review.

In our judgment, the best that can be said of the Board's position is that the PTAB could have found otherwise on the evidence before it, but it did not. Accordingly, we affirm the decision of the circuit court which affirmed the PTAB's decision regarding the classification of the parcel for tax purposes.

Before concluding this case, we address an additional matter, which is the Board's claim that the circuit court exceeded its authority—while conducting an administrative review—by "searching the record and making [the court's] own determination of the proper assessment." In response, the PTAB does not address the Board's argument at all, but instead asserts that the PTAB had the power to remand the case to the Board for a farmland assessment, even though the circuit court seemed to hold otherwise. The PTAB's brief on this point concludes as follows: "Thus, the PTAB's order, remanding Elder's appeal to the Board[,] was within its authority, and this Court should reverse the circuit court's order on that issue."

As the Board points out, although the PTAB had once filed a cross-appeal in this case (presumably on this very point), it has since dismissed that cross-appeal. Accordingly, given the PTAB's role as appellee, its posture is to defend the decision of the circuit court, not to ask this court to reverse it.

On the merits, it appears to us that the trial court's purported valuation of the property exceeds its authority in this case, which is essentially limited to reviewing the PTAB's decision. See *American National Bank & Trust Co. v. Department of Revenue*, 242 Ill. App.

▬▬▬▬▬▬▬▬▬▬▬▬

3d 716, 719, 611 N.E.2d 32, 34 (1993). Accordingly, we reverse that portion of the circuit court's judgment that appears after the court concludes that the decision of the PTAB is not against the manifest weight of the evidence and "is hereby affirmed." The portion of the judgment reversed refers to the circuit court's ordering the valuation of the parcel in the amount of $1,988, its valuation in the years prior to 1991.

### III. CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court in part and reverse that judgment in part.

Affirmed in part; reversed in part.

McCULLOUGH and COOK, JJ., concur.