NO. 4-96-0380

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

McLEAN COUNTY BOARD OF REVIEW,         )   Appeal from 

          Plaintiff-Appellant,         )   Circuit Court of

          v.                           )   McLean County

THE PROPERTY TAX APPEAL BOARD and      )   No. 93MR97

JAMES D. ELDER,                        )     

          Defendants-Appellees.        )   Honorable

                                       )   Ronald C. Dozier,

                                       )   Judge Presiding.

_________________________________________________________________

          PRESIDING JUSTICE STEIGMANN delivered the opinion of

the court:

          In 1991, the supervisor of assessments of McLean County

(Supervisor) reclassified property owned by defendant James D.

Elder from farm to residential based upon its use.  The property

in question (hereafter referred to as the parcel) is approximate-

ly 16 acres in size.  In 1992, the McLean County Board of Review

(Board) affirmed the change in classification.  Elder appealed

this decision to the Property Tax Appeal Board (PTAB), which

concluded in July 1993 that the Board's decision was incorrect

and that the parcel should be classified farmland for property

tax purposes.  

          The Board sought administrative review of the PTAB's

decision, and in January 1996, the circuit court affirmed.  The

Board appeals, and we affirm in part and reverse in part.

                               I. BACKGROUND

          When Elder purchased the parcel in May 1986, it was

being used as pastureland for cattle.  In June 1986, he received

occupancy and construction permits changing the parcel's designa-

tion from a "vacant" area to a "family recreation" area in order

to build a shelter for farm equipment, which also contained

toilet and shower facilities.  In January 1987, he received

another occupancy permit for a building "for the storage of

machinery and equipment necessary to maintain a premises, bath

and shower."  The record is not clear that Elder was in fact

required to apply for these permits for the construction on the

parcel, which is located in rural McLean County.

          Elder built a rustic pavilion-like building containing

a picnic table, a charcoal grill, a yard chair, sanitation

facilities, and a shower, as well as a small tool storage area. 

In 1991, the Supervisor changed the parcel's classification from

farm to residential "because of use."  As a result, the parcel,

which previously had a total assessed value of $1,998, now had a

total assessed value of $10,088.     

          Elder appealed the Supervisor's classification to the

Board, which agreed with the Supervisor's conclusion that the

parcel should be taxed as residential real estate.  The Board

held that because the parcel was no longer used as pasture, it no

longer fell within the definition of "farm," as defined in

section 1-60 of the Property Tax Code (Code), which, in pertinent

part, reads as follows:

               "Farm.  When used in connection with

          valuing land and buildings for an agricultur-

          al use, any property used solely for the

          growing and harvesting of crops; for the

          feeding, breeding and management of live-

          stock; for dairying or for any other agricul-

          tural or horticultural use or combination

          thereof; including, but not limited to, hay,

          grain, fruit, truck or vegetable crops,

          floriculture, mushroom growing, plant or tree

          nurseries, orchards, forestry, sod farming

          and greenhouses; the keeping, raising and

          feeding of livestock or poultry, including

          dairying, poultry, swine, sheep, beef cattle,

          ponies or horses, fur farming, bees, fish and

          wildlife farming.  The dwellings and parcels

          of property on which farm dwellings are imme-

          diately situated shall be assessed as a part

          of the farm.  Improvements, other than farm

          dwellings, shall be assessed as a part of the

          farm and in addition to the farm dwellings

          when such buildings contribute in whole or in

          part to the operation of the [farm].  For

          purposes of this Code, `farm' does not in-

          clude property which is primarily used for

          residential purposes even though some farm

          products may be grown or farm animals bred or

          fed on the property incidental to its primary

          use."  35 ILCS 200/1-60 (West 1994).

          After Elder appealed the Board's decision to the PTAB,

a hearing officer for the PTAB conducted a hearing in June 1993. 

Elder testified, as did his brother, Russ Elder, who also owned

an interest in the parcel.  The Supervisor, three members of the

Board, and the Board's attorney appeared at the hearing, and some

of them testified.  The hearing was lengthy, and some of the

pertinent testimony is described below.

          The parcel consists primarily of clay and rock, which

is not suitable for row crops.  When Elder and his brother pur-

chased the property, they were concerned with conservation and

the wildlife habitat in McLean County, in part because of woods

being cut down.  At Elder's request, the Illinois Department of

Conservation (IDOC) developed a wildlife habitat development

plan, which it then implemented by plowing the ground and plant-

ing seed that had been donated by Pheasants Forever.  In 1993,

the parcel was enrolled in a United States Forestry Department's

program which sought to develop a management plan through "forest

recreation enhancement" and "forest improvement for aesthetics." 

          The building erected on the parcel has gravel floors

and is open on three sides, with a closed storage area in the

back, which contain a John Deere 400 tractor with a belly mower,

a welder, axes, shovels, rakes, and similar items.  The building

has gravel floors.  When Elder and his brother go to the parcel

to work, they camp there.  However, they only camp there when

they are working.  Both Elders testified that the building's

function is completely incidental to working the land.  The

Elders go out to the parcel a total of 12 to 15 days a year and

have spent eight days camping on it.  

          The "farm land habitat project" the IDOC developed for

the parcel included plans telling what crops should be grown in

what location in order to maximize conservation of the soil and

create a hospitable environment for wildlife.  Because of soil

quality, IDOC recommended that the bottom third of the pasture-

land and an existing walnut grove remain intact and that the

upper portion be planted in prairie grass.  Approximately seven

acres of the parcel now consist of prairie grass, three more

acres are pastureland, and five are wooded.  

          The Elders maintain the parcel by mowing the paths sur-

rounding the grasses and the perimeter of the property, as well

as periodically burning the grasses.  They also created a cistern

to provide water for wildlife.  The Elders removed about 150

honey locust and black locust trees from the parcel, but those

trees were not marketable for any use.  

          Although Elder planted oak and pruned walnut trees on

the property, he had no current plans to harvest the timber. 

Elder tries to keep the parcel as natural as possible.  Because

no livestock grazes on it, he must periodically burn the thatch. 

Elder has seen numerous species of birds on the property, but he

made no effort to feed them.  He and his brother have hunted

pheasant only twice.  They are trying to develop an area where

the birds can live on their own without depending on people.  

          Elder testified that he did grow crops on the land, and

that he and others have harvested wildlife that live on this

property by hunting them.  He testified that before wildlife can

be harvested, they must be grown in numbers, and he maintained

the parcel in order to do that.  Although he does not actively

feed the animals, he maintains an environment in which wildlife

can find adequate food.

          Elder testified that he was trying to grow and manage

wildlife in the area, as well as grow trees for eventual harvest. 

He said that prairie grass is a cash crop, with the seeds selling

for about $60 per pound.  However, it takes about 10 years to

establish that crop.  He intends to harvest the prairie grass and

the trees when they were mature.  

          In its July 1993 written order, the PTAB referred to

the testimony and exhibits presented at the hearing and concluded

that the parcel was entitled to the farmland classification and

assessment.  In so concluding, the PTAB specifically referred to

the statutory definition of "farm" (35 ILCS 200/1-60 (West 1994)

(formerly section 1(21) of the Revenue Act of 1939 (Ill. Rev.

Stat. 1985, ch. 120, par. 482(21)))), quoted earlier.  In support

of its conclusion, the PTAB wrote, in part, the following:  

          "[Elder] testified that the land has been

          managed as a wildlife habitat since 1987 and

          that the land has continued in this use to

          the present.  [The] [t]estimony revealed that

          native prairie grasses and timber had been

          planted to improve the property for wildlife

          habitat and management."

The PTAB held that Elder's use of the parcel brought it within

the definition of "farm" for property tax purposes.  The PTAB

also included the following in its decision:  

          "[The PTAB] hereby orders the [Board] to com-

          pute a farmland assessment for the subject

          parcel.  The agricultural assessment is to be

          certified to the [PTAB] within 15 days of the

          date of this decision."

          On administrative review, the circuit court affirmed

the decision of the PTAB regarding the classification of the

parcel, although it did so for reasons other than those specified

by the PTAB.  The circuit court concluded that Elder 

          "is managing the subject property as a wild-

          life and land conservation area, he is in

          fact farming said area by the planting, cul-

          tivation and growth of hardwood trees and

          native prairie grasses, either of which can

          be harvested at an appropriate time in the

          future, that any recreational use of the

          property is incidental and insignificant, and

          that a property can be farmed and managed

          simultaneously as a conservation area, with-

          out losing its [farmland] assessment."

          The circuit court concluded that the PTAB decision was

not against the manifest weight of the evidence presented.  

          The circuit court further noted that because the Board

had refused to accept the case for remand with regard to the

proper assessment of the parcel, 

          "and no specific authority exists for the

          matter to be remanded to the [Board], the

          Court finds there is evidence in the record

          to support a valuation of the property on the

          basis by which it was evaluated in years

          prior to 1991, in the amount of $1,988, and

          the Court so orders."

                               II. ANALYSIS  

          In arguing that this court should reverse the PTAB's

determination that the parcel should be classified for tax

purposes as farmland and not as residential property, the Board

contends that this court can decide the issue of classification

de novo because "the proper classification of property as a farm

is a question of law."  The Board further asserts that "[f]ew[,]

if any, of the facts in this case are in dispute.  It is the

legal effect of these facts which has created the controversy." 

We disagree.

          In Illini Country Club v. State Property Tax Appeal

Board, 263 Ill. App. 3d 410, 416-17, 635 N.E.2d 1347, 1353

(1994), this court wrote the following:

          "Under the Administrative Review Law, judi-

          cial review extends to all questions of law

          and fact presented by the record.  [Cita-

          tion.]  An agency's findings on questions of

          law, such as the interpretation of a statute,

          are not binding on the courts.  When a ques-

          tion of law is presented below, the reviewing

          court considers the question de novo.  [Cita-

          tion.]  However, the agency's findings of

          fact will not be disturbed on review unless

          they are against the manifest weight of the

          evidence."

          In the present case, no one disputes that the defini-

tion of "farm" contained in section 1-60 of the Code governs the

classification of the parcel at issue.  However, how Elder uses

that parcel does constitute a question of fact, and the PTAB's

findings of fact regarding that use will not be disturbed on

review by this court unless we conclude those findings are

against the manifest weight of the evidence.

          When judged in accordance with the proper standard of

review, we have no difficulty in concluding that the PTAB's

decision was not against the manifest weight of the evidence.  We

agree with the PTAB that the definition of "farm" in section 1-60

of the Code is very broad and easily fits the facts in this case,

as the PTAB found.  

          The parties are familiar with the record, and we see no

need to belabor further the evidence presented at the hearing

conducted by the PTAB hearing officer.  We note in particular--in

support of the PTAB's decision--the summary of the evidence

supporting that decision which is set forth in 23 separate points

in Elder's brief and argument submitted to the circuit court on

administrative review.  

          In our judgment, the best that can be said of the

Board's position is that the PTAB could have found otherwise on

the evidence before it, but it did not.  Accordingly, we affirm

the decision of the circuit court which affirmed the PTAB's

decision regarding the classification of the parcel for tax

purposes.

          Before concluding this case, we address an additional

matter, which is the Board's claim that the circuit court exceed-

ed its authority--while conducting an administrative review--by

"searching the record and making [the court's] own determination

of the proper assessment."  In response, the PTAB does not

address the Board's argument at all, but instead asserts that the

PTAB had the power to remand the case to the Board for a farmland

assessment, even though the circuit court seemed to hold other-

wise.  The PTAB's brief on this point concludes as follows:

"Thus, the PTAB's order, remanding Elder's appeal to the Board[,]

was within its authority, and this Court should reverse the

circuit court's order on that issue."  

          As the Board points out, although the PTAB had once

filed a cross-appeal in this case (presumably on this very

point), it has since dismissed that cross-appeal.  Accordingly,

given the PTAB's role as appellee, its posture is to defend the

decision of the circuit court, not to ask this court to reverse

it.

          On the merits, it appears to us that the trial court's

purported valuation of the property exceeds its authority in this

case, which is essentially limited to reviewing the PTAB's

decision.  See American National Bank Trust Co. v. Department of

Revenue, 242 Ill. App. 3d 716, 719, 611 N.E.2d 32, 34 (1993). 

Accordingly, we reverse that portion of the circuit court's

judgment that appears after the court concludes that the decision

of the PTAB is not against the manifest weight of the evidence

and "is hereby affirmed."  The portion of the judgment reversed

refers to the circuit court's ordering the valuation of the

parcel in the amount of $1,988, its valuation in the years prior

to 1991.  

                              III. CONCLUSION

          For the reasons stated, we affirm the judgment of the

circuit court in part and reverse that judgment in part.

          Affirmed in part; reversed in part.

          McCULLOUGH and COOK, JJ., concur.